1    **WO**

2

3

4

5                        IN THE UNITED STATES DISTRICT COURT

6                        FOR THE DISTRICT OF ARIZONA

7

8    Tandy Miller,                              No. CV-11-333-TUC-JGZ

9                        Plaintiff,

10   v.                                          **ORDER**

11   Graham County, et al.

12                        Defendants.

13

14          Pending before the Court is a Motion for Summary Judgment filed by Defendants

15   Graham County, Mark Herrington, James Palmer and Drew John ("Defendants") on

16   November 21, 2012.[1]  (Doc. 58.)  Plaintiff Tandy Miller ("Miller") filed a response to the

     Motion on January 10, 2013.  (Doc. 61.)  Defendants filed a reply on February 1, 2013.
17
     (Doc. 66.)  On March 22, 2013, the Court ordered Defendants to file a controverting
18
     statement of facts in response to Plaintiff's separate statement of facts; Defendants filed
19
     their Controverting Statement of Facts on May 15, 2013.[2]  (Doc. 67, 72.)  Defendants
20
     seek summary judgment on Plaintiff's claims of gender discrimination, national origin
21
     discrimination and retaliation.  For the reasons stated herein, the Court will grant the
22
     Motion.[3]
23

24

25          [1] Defendants Mark Herrington, James Palmer and Drew John are sued only in their
26   representative capacities.  (Doc. 61, pg. 1.)  Individual defendants cannot be held liable under
     Title VII.  *See Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998).

27          [2] Briefing in this matter was delayed by a failed settlement conference.

28          [3] This case is suitable for decision without oral argument.  *See* L.R. Civ. 7.2(f).

## FACTUAL / PROCEDURAL BACKGROUND

Plaintiff is a former employee of Graham County at the Eastern Arizona Regional Juvenile Detention Facility ("EARJDF"), a small facility which employs 13-16 staff and administrators. (DSOF 1, 5; PSOF 1, 5.)[4]   Of those employees, approximately 7 are Caucasian. (DSOF 6; PSOF 6.)  Plaintiff is Caucasian and was born in the United States. (DSOF 1; PSOF 1.)   Plaintiff was employed by the County from 2006 until her resignation in October 2008. (DSOF 2; PSOF 2.)  In June 2008, Plaintiff applied for a sergeant position. (DSOF 48; PSOF 48.)  Sgt. Esgardo Luzania, who is a Hispanic male, was hired for the position. (DSOF 48; PSOF 48.)

In June 2009 Plaintiff was rehired as a Temporary Detention Officer. (DSOF 3; PSOF 3.)   Around that time, Graham County selected Sgt. Robert Pruszynski for a promotion. (PSSOF 47.) Plaintiff remained a temporary employee until November 2009, when she became a full-time detention officer. (DSOF 4; PSOF 4.)

In October 2009, Plaintiff's schedule was adjusted to a split-shift: Plaintiff worked part of the swing-shift and part of the graveyard shift, four days per week. (DSOF 9; PSOF 9.)  During the graveyard shift, Plaintiff assisted Lt. Terry Lemley with American Correctional Association ("ACA") audit preparations after the inmates were locked up for the night. (DSOF 10; PSOF 10.)   During the graveyard portion of her shift, Plaintiff's supervisor was Lt. Lemley. (DSOF 12; PSOF 12.)  During the swing-shift portion of her shift, Plaintiff's supervisors were Sgt. Pruszynski and Sgt. Luzania. (DSOF 13; PSOF 13.)  Sgt. Luzania only supervised Plaintiff on Saturdays and Sundays. (DSOF 13; PSOF 13.)

Plaintiff alleges that Sgt. Luzania was hostile toward her.  In October 2009, Sgt.

---

[4] Defendants' Statement of Facts (Doc. 52) is abbreviated herein as "DSOF."  Plaintiff's Controverting Statement of Facts (Doc. 62, pgs. 1-5) is abbreviated herein as "PSOF." Plaintiff's Additional Facts (Doc. 62, pgs. 5-21) is abbreviated herein as "PSSOF."  Defendants' Controverting Statement of Facts (Doc. 72) is abbreviated herein as "DCSOF".  The Court notes that Exhibit 1 is missing from PSOF.  (Doc. 62-1.)  Also, PSOF does not comply with the Court's September 15, 2011 Scheduling Order, which advised the parties that pleadings appended with more than one exhibit shall be divided by tabbed dividers and secured on the left hand side. (Doc. 13, pg. 2.)

Luzania began ignoring Plaintiff's radio communications to him.  (DSOF 50; PSOF 50.)  Sometimes, when Sgt. Luzania was in the control room, he would not respond in a timely manner to Plaintiff's requests to open locked pod doors. (DSOF 50; PSOF 50.)   Plaintiff heard Sgt. Luzania complain to Sgt. Pruszynski that women do not belong in corrections. (DSOF 53; PSOF 53.)  In April 2010, Sgt. Luzania commented that Plaintiff should be put in charge of the laundry at the facility.  (DSOF 54; PSOF 54.)  Sgt. Luzania also provoked the juvenile detainees to be angry at Plaintiff. (DSOF 55; PSOF 55.)  In mid-October 2009, Plaintiff complained to Sgt. Pruszynski about Sgt. Luzania's behavior. (DSOF 76; PSOF 76.)   Shortly thereafter, Sgt. Luzania revised the work schedule to preclude Plaintiff from working in the control room.  (DSOF 83; PSOF 83.)

In October 2009, Sgt. Pruszynski completed an evaluation of Plaintiff stating that she exceeded expectations in four areas and needed improvement in three areas.  (DSOF 65, 67; PSOF 65, 67.)  Sgt. Lemley revised the evaluation and omitted the "needs improvement" ratings; following his revisions Sgt. Pruszynski refused to sign the evaluation.  (DSOF 68, 88, 89; PSOF 68, 88, 89.)   The evaluation did not go into Plaintiff's personnel file. (DSOF 90; PSOF 90.)

In January 2010, Plaintiff was assigned to work with Lt. Lemley in administration full-time, preparing for the ACA audit.  (DSOF 14; PSOF 14.)  Lt. Lemley became her only supervisor.  (DSOF 14; PSOF 14.)  Plaintiff's shift hours changed from 8 a.m. to 5 p.m. and she no longer had floor duties.[5]  (DSOF 15; PSOF 15.)  According to Plaintiff, because her assignment to work on the ACA audit lasted more than 30 days, she was entitled to a reclassification and pay raise, but Graham County refused to reclassify her.[6] (PSSOF 10-11.)

Plaintiff alleges that in March 2010, when she was tasked with cleaning the staff

---

[5] Plaintiff disputed this fact, but the additional facts presented by Plaintiff were not relevant and did not create a genuine issue of material fact.  (PSOF 15; PSSOF 72.)

[6] Plaintiff's Additional Facts cites to the depositions of Lemley and Gatwood to support this allegation; neither deponent stated that Plaintiff sought a reclassification but was denied. (PSSOF 10-11.)

restroom, she would often find the toilet brush holder filled with urine.  (PSSOF 26.)

In May 2010, Lt. Lemley recommended that Plaintiff receive a pay increase, but Administrator Charles Gatwood denied the request for budget reasons. (Doc. 62-3, pg. 10.)  Later that month, Administrator Gatwood reprimanded Lt. Lemley for showing favoritism to Plaintiff.  (PSSOF 27.)  Gatwood also suggested that Lt. Lemley avoid the appearance of impropriety by not attending the same training sessions as Plaintiff. (PSSOF 28.)

In July 2010, Plaintiff met with Administrator Gatwood and Assistant Administrator Michael Aranda regarding rumors of an inappropriate relationship between Plaintiff and Lt. Lemley.  (DSOF 17; PSOF 17.)  According to Plaintiff, Sgt. Luzania and Sgt. Pruszynski had made comments to other staff members suggesting that Plaintiff and Lt. Lemley were having an affair.  (PSSOF 20-21.)  Thereafter, Plaintiff was reassigned to floor duties on the graveyard shift.  (DSOF 18; PSOF 18.)  Plaintiff worked only one graveyard shift before she was reassigned back to the ACA audit at Lt. Lemley's request. (DSOF 18; PSOF 18.)  Lt. Lemley remained her supervisor.  (DSOF 19; PSOF 19.)

On August 6, 2010, Plaintiff lodged a formal complaint with the County, alleging that Sgt. Luzania had created a hostile work environment for Plaintiff.  (DSOF 20; PSOF 20.)  The County initiated a formal investigation and retained an independent investigator, Keith Sobraske.  (DSOF 21; PSOF 21.)  According to Plaintiff, Assistant Administrator Aranda told Sgt. Luzania and Sgt. Pruszynski that he would make the investigation "go away."  (PSSOF 30.)  Plaintiff also alleges that Defendants released her confidential personnel file to Sobraske.  (PSSOF 31.)

Plaintiff was scheduled to go on vacation at the end of August, following completion of the audit preparation.  Shortly before her vacation, Administrator Gatwood told Plaintiff to take the rest of the week off because she could not be paid any more overtime.  (DSOF 25-26; PSOF 25-26.)  According to Plaintiff, other employees were allowed to work additional overtime that week. (PSSOF 36.)  Plaintiff also alleges that her overtime payment was delayed by a paycheck.  (PSSOF 37.)  Plaintiff submitted a

written request that she be put on a different shift than Sgt. Luzania when she returned from vacation.  (DSOF 22-23; PSOF 22-23.)  On September 20, 2010, at the end of her vacation, Plaintiff was assigned to floor duties with Sgt. Pruszynski as her supervisor. (DSOF 28; PSOF 28.)  However, for 2 days in October, while Sgt. Pruszynski was on vacation, Sgt. Luzania would supervise Plaintiff.  (DSOF 29-30; PSOF 29-30.)   On one of those two days, Plaintiff was assigned to the Alpha-Pod; on both of those days she would be working alone with Sgt. Luzania from 6:00 p.m. to 9:00 p.m. (PSSOF 39-40; DCSOF 39-40.)

On September 21, 2010, Plaintiff obtained a doctor's order stating that she was unable to work for 2 weeks due to work-related stress.  (DSOF 31; PSOF 31.)  On that same day, Plaintiff gave Administrator Gatwood a Notice of Constructive Discharge setting October 6, 2010 as the last day of her employment.  (DSOF 32-33; PSOF 32-33.) On October 5, 2010, Plaintiff was informed that Investigator Sobraske had completed his investigation and determined that Plaintiff's complaints were unsubstantiated.  (DSOF 34; PSOF 34.)  Plaintiff restated her intent to resign as of October 6, 2010; she was asked to turn in her badge and keys one day early.  (DSOF 36-37; PSOF 36-37; PSSOF 110-111; DCSOF 110-111.)  Plaintiff claims that, following her termination, she discovered that Defendants had instructed some of her co-workers not to speak to her.  (PSSOF 33.)

On October 7, 2010, Plaintiff filed an EEOC charge of discrimination alleging discrimination and retaliation on the basis of gender and national origin.  (DSOF 39; PSOF 39.)  According to the EEOC Charge, Sgt. Luzania subjected Plaintiff to different terms and conditions of employment by changing Plaintiff's rotation assignments, keeping prisoners in lock-down until Plaintiff's shift started, reprimanding Plaintiff publicly, refusing to acknowledge Plaintiff and refusing to unlock doors for Plaintiff. (Doc. 52-1, pg. 61.)   Plaintiff alleged that Sgt. Luzania's treatment of Plaintiff was motivated by his animus toward women and non-Hispanics.  Plaintiff alleged that she had complained about Sgt. Luzania's treatment beginning in October 2009 but nothing had changed.  (*Id*.)  In addition, Plaintiff alleged that in August 2010 she was told to take time

off because she was not entitled to any more overtime, but similarly situated co-workers who had not complained of discriminatory treatment were permitted to work additional overtime hours.  (*Id*.)  Finally, Plaintiff alleged that she was forced to resign due to medical stress caused by her discovery that she was assigned to work alone with Sgt. Luzania for two days in October. (*Id*.)

On June 3, 2011, Plaintiff filed her Complaint in the instant action alleging three claims: (1) gender discrimination; (2) national origin discrimination; and (3) retaliation; all in violation of Title VII, 42 U.S.C. § 2000e *et. seq*.

## STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim.  *Id.; see also* Fed. R. Civ. P. 56(c).

If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  *See also Anderson*, 477 U.S. at 256; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(9th Cir. 1995).   The nonmoving party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

## STATUTE OF LIMITATIONS / SCOPE OF REVIEW

Under Title VII, a plaintiff seeking relief pursuant to the statute's provisions must file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). If, however, the plaintiff first institutes proceedings with a state or local agency "with authority to grant or seek relief from such practice," the period of limitations for filing a charge with the EEOC is extended to 300 days. *Id.*   Because the limitations period under Title VII operates as a statute of limitations, a claim of discrimination under the Act will not be sustained if it is based on an event or events that occurred more than 300 days before the filing of a charge.   *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94 (1982).

Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge."   *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (citation omitted).   In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges.  *Id*. (citation omitted).

## ANALYSIS

Defendants are entitled to summary judgment on Plaintiff's claims of gender discrimination, national origin discrimination and retaliation.  Some of the discriminatory acts alleged by Plaintiff are not supported by admissible evidence.   Some of the discriminatory acts alleged by Plaintiff are outside the scope of her EEOC charge and therefore this Court lacks jurisdiction.   Some of the discriminatory acts alleged by Plaintiff are time-barred.  Finally, the remaining allegations do not establish a material issue of fact as to Plaintiff's claims: Plaintiff cannot demonstrate the similarly situated

individuals outside of her protected class were treated more favorably; the alleged conduct was not severe enough to establish a hostile work environment claim;[7] and Plaintiff cannot establish a prima facie case of retaliation because Defendants have articulated a legitimate, non-discriminatory reason for the alleged adverse employment actions.

## I.   Admissible Evidence of Discrimination

In responding to Defendants' Motion for Summary Judgment, Plaintiff alleges a litany of discriminatory activity by Defendants in support of her claims that Defendants created a "hostile work environment" and that Graham County persisted in "refusing to promote, pay and retain Miller in various positions [in] a continuing violation of her civil rights."  (Doc. 61, pg. 1.)   The incidents of discrimination alleged by Plaintiff are as follows: (1) In August, 2008, Graham County selected Sgt. Luzania instead of Plaintiff for a promotion; (2) in June 2009, Graham County selected Sgt. Pruszynski instead of Plaintiff for a promotion; (3) Plaintiff overheard Sgt. Luzania tell Sgt. Pruszynski that women had no place in corrections; (4) Sgt. Luzania locked Plaintiff out of the workplace for unreasonable lengths of time by failing to respond to her radio calls; (5) Sgt. Luzania increased the risk of harm to Plaintiff by scheduling her to work in the Alpha Pod; (6) Sgt. Luzania incited inmates against Plaintiff by unnecessarily confining them before her shift; (7) Sgt. Luzania and Sgt. Pruszynski would not assign Plaintiff to work in the control room; (8) Graham County refused to reclassify Plaintiff for a pay increase in January 2010; (9) in May 2010, Administrator Gatwood refused to forward a recommendation for a pay increase for Plaintiff; (10) in July 2010 Plaintiff was assigned to work the graveyard shift; (11) Assistant Administrator Aranda engaged in misconduct which created an environment of tolerance for sexual innuendo and teasing; (12) Sgt. Luzania and Sgt. Pruszynski suggested to other staff that Plaintiff and Lt. Lemley were in

---

[7] In their Motion for Summary Judgment, Defendants stated that "it is unclear whether Plaintiff bases her claim on Disparate Treatment, Hostile Work Environment, or both."  (Doc. 51, pg. 8.)   Plaintiff did not clarify the nature of her discrimination claim in her response, although the bulk of her response is devoted to discussion of the elements of a disparate treatment claim, and she makes only a one-line reference to a hostile work environment.  (Doc. 61, pg. 7.)

a romantic relationship; (13) Sgt. Luzania suggested Plaintiff should be assigned to do the laundry for the facility; (14) in March 2010, Plaintiff would often find the toilet brush holder filled with urine when she was tasked with cleaning the staff restroom; (15) on May 25, 2010, Administrator Gatwood reprimanded Sgt. Lemley for showing favoritism to Plaintiff; (16) in 2010, Administrator Gatwood suggested to Sgt. Lemley that he not attend the same training sessions as Plaintiff; (17) Assistant Administrator Aranda told Sgt. Pruszynski and Sgt. Luzania that he would make the internal investigation of Plaintiff's discrimination complaint "go away"; (18) Defendants instructed some of Plaintiff's co-workers not to speak with her; (19) Defendants did not honor Plaintiff's request to work a different shift from Sgt. Luzania; (20) in August 2010, Administrator Gatwood refused to allow Plaintiff to work overtime; (21) in August 2010, Defendants delayed payment of Plaintiff's overtime; (22) Sgt. Luzania and Sgt. Pruszynski urged that Lt. Lemley not be permitted to supervise Plaintiff once the ACA audit was complete; and (23) Detention officer Mona Lucero was allowed to work overtime, was rarely assigned to the Alpha Pod and was given unreasonably favorable evaluations. (Doc. 61, pgs. 1-5; 7.)

Of the 23 alleged incidents of discrimination, nine are not supported by admissible evidence:

- Plaintiff alleges that in June 2009, Graham County selected Sgt. Pruszynski instead of Plaintiff for a promotion. (PSSOF 47.) In support of this claim, Plaintiff cites to the deposition testimony of Administrator Gatwood. He testified only that he told Lt. Lemley that Plaintiff could not apply for the promotion to sergeant. (Doc. 62-1, pg. 6.) There is no evidence in the record that Lt. Lemley repeated this information to Plaintiff or that Plaintiff was actually interested in and/or applied for the position.

- Plaintiff cites to the depositions of Pruszynski and Gatwood in support of her claim that Sgt. Luzania and Sgt. Pruszynski would not allow her to work in control. (PSSOF 8.) Neither deposition supports that conclusion; at best Sgt. Pruszynski testified that on one occasion he re-assigned Plaintiff from control to

Alpha-Pod.  (Doc. 62-1, pgs. 40-41.)

- Plaintiff's claim that Sgt. Luzania increased the risk of harm to Plaintiff by scheduling her to work in Alpha-Pod is not supported by the record.  The two schedules submitted by Plaintiff demonstrate that she was assigned to Alpha-Pod at generally the same frequency as other officers, including Sgt. Luzania.  (Doc. 62-1, Ex. 23; Doc. 62-5, Ex. 44.)

- According to Plaintiff, because her assignment to work on the ACA audit lasted more than 30 days, she was entitled to a reclassification and pay raise, but Graham County refused to reclassify her. (PSSOF 10-11.)  Plaintiff's Additional Facts cites to the depositions of Lemley and Gatwood to support this allegation; neither deponent clearly stated that Plaintiff sought a reclassification but was denied. (PSSOF 10-11.)  To the contrary, Gatwood testified that Plaintiff had not sought a reclassification and Cooper testified that reclassification is only appropriate when an employee is promoted to supervisor or assigned duties "much elevated" above her position description.  (DCSOF 12.)

- In support of her claim that Administrator Gatwood refused to forward a pay increase request for Plaintiff at the same time Sgt. Luzania was approved for a pay increase, Plaintiff cites only to irrelevant or inadmissible evidence: a letter purportedly from Lt. Lemley to Gatwood requesting a pay increase for Plaintiff and containing a handwritten notation stating "denied due to budget reductions," and the affidavit of Lt. Lemley, who states that Sgt. Luzania received a pay increase on that date.  (Doc. 62-3, pg. 10; Doc. 62-1, pg. 115.)  Both the letter and the affidavit are inadmissible hearsay and without foundation. (DCSOF 13.)

- Plaintiff claims that Assistant Administrator Aranda engaged in misconduct which created an environment of tolerance for sexual innuendo and teasing.  (PSSOF 17.) Plaintiff's Additional Facts cites to the depositions of Pruszynski and Aranda, neither of whom offered testimony that supports this claim.  Pruszynski testified that he once received a text message sent to him in error by Aranda, which "could have been" sexual but he could not remember.  (Doc. 62-1, pg. 38.)   Aranda

testified only that he had texted "jokes and pictures" to supervisors.  (Doc. 62-1.)  There is no evidence in the record to suggest that Aranda engaged in misconduct.

- Plaintiff claims that Assistant Administrator Aranda told Sgt. Pruszynski and Sgt. Luzania that he would make the internal investigation of Plaintiff's discrimination complaint "go away."  (PSSOF 30.)  Plaintiff claims that in making this statement within Lemley's  hearing, "this may have been an attempt to influence Lemley to moderate or end his support of Miller."  (Doc. 61, pg. 4.)  In support of this assertion, Plaintiff cites to the affidavit of Lt. Lemley, who claims that "on August 17, 2010, while in my office, I overheard Assistant Administrator Aranda tell Sgt. Pruszynski and Sgt. Luzania in the administration hallway … not to worry about Sobraske's investigation because he could cover it up or make it go away."  (Doc. 62-1, pgs. 112-113.) The affidavit is inadmissible hearsay and does not support Plaintiff's contention.  (DCSOF 30.)

- Plaintiff claims that in August, 2010, Administrator Gatwood refused to allow Plaintiff to work overtime but permitted other detention officers to work overtime.  (PSSOF 36.)    Administrator  Gatwood's  undisputed  testimony,  however, demonstrates that Plaintiff requested to work overtime on ACA issues, which were no longer urgent, while other employees were scheduled to work overtime on mandatory shifts.  (Doc. 62-1, pg. 13.)  Plaintiff would have been permitted to work overtime on mandatory shifts like the other officers, but she did not request to do so.  (*Id*.)

- Plaintiff alleges that detention officer Mona Lucero was allowed to work overtime, was  rarely  assigned  to  the  Alpha  Pod  and  was  given  unreasonably  favorable evaluations.   Plaintiff has not presented admissible evidence in support of this claim.    As  previously  stated,  Administrator  Gatwood's  undisputed  testimony establishes that Plaintiff was permitted the same opportunity to accrue overtime on mandatory shifts as the other employees.   The schedules produced by Plaintiff demonstrate that Lucero worked in the A-Pod as frequently as other officers.  (Doc. 62, Exs. 23 & 37.)  Contrary to Plaintiff's assertions, neither Sgt. Pruszynski

nor Administrator Gatwood testified in deposition that Lucero received unreasonably favorable evaluations.  (Doc. 62, Exs. 2 & 5.)

In sum, of the 23 incidents of discrimination alleged by Plaintiff, only 14 are supported by admissible evidence in the record.[8]  The Court will consider the merits of Plaintiffs' claims based upon the admissible evidence that has been presented.

**II.   Some of the instances of discrimination alleged by Plaintiff were not alleged in her EEOC charge and/or are outside the statute of limitations and therefore cannot be considered by this Court**

Plaintiff's EEOC Charge alleges that beginning in June, 2009, Sgt. Luzania changed the rotation of her assignments, kept prisoners in lock-down until her shift started, reprimanded her publicly, refused to acknowledge her and refused to open locked doors for her.  The EEOC Charge also alleges that after Plaintiff complained about Sgt. Luzania's treatment of her, she was unfairly denied overtime in August 2010 and constructively discharged in September 2010. Consequently, Plaintiff's EEOC Charge alleges that Sgt. Luzania discriminated against her on the basis of her gender and national origin, and that the County retaliated against Plaintiff for reporting the discrimination by constructively discharging her.[9]  Several of the incidents of discrimination that Plaintiff alleges in the present case are not reasonably related to the allegations made in Plaintiff's EEOC Charge.  Plaintiff alleges that Sgt. Luzania and Sgt. Pruszynski made statements to Officer Aguinaga suggesting that Plaintiff and Lt. Lemley were romantically involved. Similarly, Plaintiff alleges that Sgt. Luzania and Sgt. Pruszynski expressed their opinion that Plaintiff not be supervised by Lt. Lemley after the ACA audit was complete.  These comments are not related to Plaintiff's claim in her EEOC Charge that Sgt. Luzania

---

[8] In addition, as noted in Defendants' Reply, many of the allegations that lack factual basis are also outside the scope of the EEOC charge and/or time-barred.  Furthermore, some of the incidents of discrimination that Plaintiff describes in her response, such as Sgt. Luzania's alleged comment that women do not belong in corrections, are not tied by legal argument to any of Plaintiff's claims.

[9] As stated in Section I, above, Plaintiff's claim that she was unfairly denied overtime is not supported by admissible evidence and has not been considered by this Court.

placed her in unsafe or unfavorable working assignments.[10]  Plaintiff alleges that she was improperly transferred to the graveyard shift for one night; it is undisputed that the transfer was due to Administrator Gatwood's and Assistant Administrator Aranda's concerns about an inappropriate relationship between Sgt. Lemley and Plaintiff.  (Doc. 62-4, pg. 23.)   Finally, Plaintiff notes that Administrator Gatwood reprimanded Lt. Lemley for showing favoritism to Plaintiff and discouraged him from attending the same training sessions as Plaintiff; this claim has no bearing on Plaintiff's EEOC Charge that Sgt. Luzania treated her unfairly and she was constructive discharged for reporting it.  In short, it appears that Plaintiff is attempting to inject a suggestion of sexual harassment into her discrimination claim where no such allegation was present in her EEOC Charge.[11] The Court will not consider these allegations in the context of Defendants' Motion for Summary Judgment.

Plaintiff filed her EEOC Complaint on October 7, 2010.  Defendants therefore contend that Title VII's 300-day statute of limitations precludes this Court from considering alleged events occurring before December 11, 2009.  Plaintiff contends that the Court may consider events occurring before December 11, 2009 under the "continuing violations doctrine," which "extends the accrual of a claim if a continuing system of discrimination violates an individual's rights up to a point in time that falls within the applicable limitations period."  *See Douglas v. California Dept. of Youth Authority*, 271 F.3d 812, 822 (9th Cir. 2001) (citing *Williams v. Owens-Illinois, Inc*., 665 F.2d 918, 924 (9th Cir.1982)).  A plaintiff may demonstrate a serial violation in one of two ways: (1) by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations; or (2) by pointing to a systematic policy or practice of discrimination that operated, in part, within the limitations period.

---

[10]  In addition, Officer Aguinaga's statements to the County investigator regarding Sgt. Luzania's and Sgt. Pruszynski's comments to him are inadmissible hearsay.

[11]  In addition, starting rumors does not amount to an adverse employment action.  *See E.E.O.C. v. Parra*, 2008 WL 2185124, n.6 (D. Or. 2008), nor does ostracism by co-workers.  *See Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir.1996).

*See id.*   In the present case, Plaintiff has not presented any evidence of a systemic, continuing policy of discrimination.  To the extent that Plaintiff alleges that she was the victim of a series of related acts against her, the Court will consider the allegations of discrimination arising from Sgt. Luzania's conduct – Plaintiff has alleged that Sgt. Luzania's discriminatory treatment began in June, 2009 but continued beyond December, 2009.  The Court will not consider Plaintiff's claim that she was not hired for a sergeant position at EARJDF in August, 2008, as that allegation is too factually and temporally remote from Plaintiff's allegations that Sgt. Luzania began discriminating against her in June, 2009 and she was retaliated against in August/September, 2010.[12]

**III.   Plaintiff cannot establish a prima facie case of gender or national origin discrimination because she cannot demonstrate that similarly-situated individuals outside of her protected class were treated more favorably.**

In an employment discrimination case, unless there is direct evidence of discrimination presented by the plaintiff, the Court will generally apply the familiar burden shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Although Plaintiff alleges generally that she "presents a prima facie case by both direct and circumstantial evidence" (Doc. 61, pg. 6), Plaintiff does not specifically identify any direct evidence of discrimination.  Accordingly, the Court examines whether Plaintiff can demonstrate a prima facie case under *McDonnell Douglas*, *ie.* Plaintiff must show that: (1) she belongs to a protected class, (2) she was performing her position satisfactorily, (3) she was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably.  *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).  In the present case, Plaintiff has failed to demonstrate a material issue of fact regarding whether similarly situated individuals outside her protected class were treated more favorably.

With respect to her gender discrimination claim, Plaintiff alleges that males were treated more favorably than her when: (1) Sgt. Luzania received a promotion and was

---

[12] The Court also notes that Plaintiff resigned from EARJDF in 2008 and was not employed by the County at the time she applied for the sergeant position.

allowed to work overtime, (2) Sgt. Pruszynski was promoted, received a merit pay increase and was allowed to work overtime, (3) male employees were allowed to work overtime, and (4) no male employees were subjected to a hostile work environment. None of these alleged events create a material issue of fact. First, for the reasons stated in Section I, above, Plaintiff has not presented admissible evidence in support of her claim that Sgt. Pruszynski received a promotion or pay increase for which Plaintiff applied or that other employees received overtime for which Plaintiff was denied. As stated in Section II, above, Sgt. Luzania's promotion occurred more than 300 days before Plaintiff filed her EEOC charge. In addition, Plaintiff cannot compare her treatment to that of Sgt. Luzania or Sgt. Pruszynski, because "employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Finally, for the reasons stated below, the Court concludes that there is no material issue of fact as to Plaintiff's claim of hostile work environment. Accordingly, Plaintiff's claim that other employees were treated more favorably because they were not exposed to a hostile work environment is without legal merit. Plaintiff has failed to demonstrate a material issue of fact regarding whether similarly-situated men were treated more favorably than her, and therefore Defendants are entitled to summary judgment on Plaintiff's gender discrimination / disparate treatment claim.

With respect to her national origin claim, Plaintiff alleges that Hispanics were treated more favorably then her when: (1) Sgt. Luzania received a promotion and was allowed to work overtime, (2) Detention Officer Mona Lucero was allowed to work overtime, was rarely assigned to the Alpha Pod and was given unreasonably favorable evaluations, and (3) no Hispanic was subject to a hostile work environment. None of these alleged events creates a material issue of fact. As previously stated, Plaintiff's claim that Sgt. Luzania received a promotion for which Plaintiff was qualified is untimely, and Plaintiff cannot compare her treatment to that of Sgt. Luzania. Plaintiff's claim that she was denied overtime when other employees were paid overtime is not supported by admissible evidence. Finally, Plaintiff's claim that Mona Lucero received

more preferential treatment is not supported by admissible evidence. Accordingly, Plaintiff has failed to demonstrate a material issue of fact regarding whether similarly situated non-Caucasian employees were treated more favorably than her, and therefore Defendants are entitled to summary judgment on Plaintiff's national origin discrimination / disparate treatment claim.

**IV. Plaintiff cannot establish a prima facie case of gender or national origin discrimination under a hostile work environment theory because the alleged conduct was not sufficiently severe**

To establish a prima facie case of hostile work environment premised on national origin or gender under Title VII, Plaintiff must establish that (1) she was subjected to verbal or physical conduct of a harassing nature that was based on her national origin or gender, (2) the conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Kang v. U. Lim America*, 296 F.3d 810, 817 (9th Cir. 2002). The conduct must be extreme in order to amount to a change in the terms and conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

When the basis for a hostile work environment claim is gender, the harassing conduct "need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. The motivation can be a 'general hostility to the presence of women in the workplace.'" *Kortan v. California Youth Authority*, 217 F.3d 1104, 1110 (9th Cir. 2000) (citing *Oncale v. Sundowner Offshore Servs*., Inc., 523 U.S. 75 (1998)). Further, where two grounds for discrimination exist, as here, we may look to all the circumstances "to determine whether the employer discriminate[d] against that combination of factors." *Lam v. University of Hawaii*, 40 F.3d 1551, 1562 (9th Cir. 1994) (recognizing combined race and sex discrimination claims under Title VII).

Plaintiff alleges that she was subjected to a hostile work environment by Sgt. Luzania. (Doc. 61, pg. 7.) Plaintiff alleges that Sgt. Luzania delayed his responses to her radio calls in order to lock her out of the workplace for unreasonable lengths of time, incited inmates against Plaintiff before her shift and suggested that Plaintiff do the

facility's laundry.  Plaintiff also alleges that she discovered urine in the toilet brush holder when she was tasked with cleaning the staff restroom and that after her termination her co-workers were instructed not to speak to her.  As a threshold matter, the Court notes that most of what Plaintiff identifies as proof of a hostile work environment is supported only by Plaintiff's own characterization of it as such.  Mere personal beliefs, conjecture and speculation are insufficient to support an inference of unlawful discrimination. *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) First, while Plaintiff claims that Sgt. Luzania "would ignore me whenever I would ask to have the A-Pod door open so I could step out," she conceded that there will occasionally be a legitimate delay in opening a locked door.  (PCSOF 1; Doc. 61, pg. 8.)  Furthermore, Plaintiff testified at her DES hearing that Sgt. Luzania only refused to open doors for her "a couple of times."  (Doc. 62-1, pg. 83.)  Sgt. Luzania testified that when he is working in the control room, it is his practice to respond to radio calls from detention officers as soon as he can, but that if he is busy with a phone call or a matter with higher priority, the officer on radio must wait or call back and state that it is urgent.  (Doc. 62-1, pg. 33.)  His testimony is supported by Assistant Administrator Aranda's testimony that the officers may have to wait for a door to be unlocked if the officer in the control room is busy with the camera or the phone.  (Doc. 62-1, pg. 51.)  Second, Plaintiff testified that Sgt. Luzania would go into the A-Pod before Plaintiff arrived at work and tell the juveniles that they had to be locked down because Plaintiff had not arrived at work, which caused the juveniles to be angry with Plaintiff when she arrived.  (Doc. 52-1, pg. 8.)  Although Plaintiff appears to believe that Sgt. Luzania did this intentionally to incite the juveniles against her, Administrator Gatwood testified that the juveniles were required to be locked down prior to Plaintiff's arrival due to staff shortages, and Sgt. Luzania stated that he only told the juveniles the truth, *ie*. that they could come out of lockdown when Plaintiff started her shift.  (Doc. 52-1, pgs. 35 & 64.)   Third, Plaintiff's own testimony establishes that Sgt. Luzania suggested that Plaintiff do laundry for the facility after he overheard Plaintiff complaining that the laundry had not been done properly and that staff should be trained on how to use the washing machine.  (Doc. 52-1,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pg. 10.)    Fourth, Plaintiff has not presented any evidence outside of her opinion demonstrating that the substance in the toilet brush holder was actually urine or that it had been intentionally placed there by Sgt. Luzania.  In short, in attempting to establish a material issue of fact regarding her hostile work environment claim, Plaintiff has largely substituted self-serving opinion for fact.

Furthermore, even if the alleged conduct is considered in the light in which Plaintiff has cast it, is not sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment.  In evaluating the objective hostility of a work environment, the Court considers the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *See McGinest v. GTE Service Corp*., 360 F.3d 1103, 1113 (9th Cir. 2004).  Even if Sgt. Luzania routinely delayed unlocking doors for Plaintiff, there is no evidence (only Plaintiff's conjecture) that his decision to do so put Plaintiff at physical risk.  To the contrary, Assistant Administrator Aranda testified that an officer who must wait for a door to be opened is "not normally" at any risk.  (Doc. 62-1, pg. 52.)  Even if Sgt. Luzania deliberately induced juveniles to resent Plaintiff for the fact that they were in lockdown, there is no evidence that any of the juveniles were anything more than "a little irate," as Plaintiff described them.[13]  (Doc. 52-1, pg. 8.)  An offhand comment such as Sgt. Luzania's suggestion that Plaintiff do the facility's laundry does not amount to a discriminatory change in the terms and conditions of Plaintiff's employment. *See Kortan v. California Youth Authority*, 217 F.3d 1104, 1111 (9th Cir. 2000) (no issue of fact where supervisor made hostile comments to psychologist at youth corrections center on one occasion).  Finally, as to Plaintiff's general sense that someone may have urinated in the toilet brush holder or that her former employer may have told other employees not to speak to her, neither incident unreasonably interfered with Plaintiff's work performance. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims of

---

[13] The Court notes that employment in the field of corrections is inherently dangerous, and that much of the "risk" described by Plaintiff is due to the nature of her former employment.

gender and national origin discrimination.  .

## V.   Plaintiff cannot establish a prima facie case of retaliation because Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's resignation.

To establish a prima facie case of retaliation under Title VII, the employee must allege and prove that (1) she engaged in a protected activity, (2) her employer subjected her to adverse employment action, and (3) there was a causal link between the protected activity and the employer's action. *See Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). Once the employee establishes a prima facie case, the burden shifts to the employer to present legitimate, non-discriminatory reasons for the adverse employment action. Once the employer meets this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for retaliation.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  Only then does the case proceed beyond summary judgment. *Id.*

In the present case, Plaintiff alleges that she suffered the following adverse employment actions: (1) after Plaintiff told Sgt. Pruszynski that she intended to complain about Luzania's treatment of her, Sgt. Luzania revised the schedule so that Plaintiff was not working in the control room; (2) in October 2009, Sgt. Pruszynski completed an evaluation of Plaintiff stating that she exceeded expectations in four areas and needed improvement in three areas; (3) Plaintiff discovered the toilet brush holder filled with urine when she was assigned to clean the staff bathroom; and (4) Plaintiff was constructively discharged in October, 2010.  (Doc. 61, pgs. 10-12.)[14]

Of the four incidents alleged by Plaintiff, the first three do not constitute adverse employment actions.  First, Plaintiff's claim that Sgt. Luzania revised the schedule so that

---

[14] In her EEOC Charge, Plaintiff alleges that she was retaliated against when she was unfairly denied overtime and constructively discharged.  As stated in section I, Plaintiff has not presented admissible evidence in support of her claim that she was unfairly denied overtime.  In addition, the Court may only consider alleged adverse employment actions that were alleged in the EEOC Charge or would have been encompassed by the EEOC investigation.  Some of the alleged adverse employment actions asserted by Plaintiff in support of her retaliation claim are not reasonably related to her claim before the EEOC that she suffered an adverse employment action when constructively discharged, and the Court has not considered those claims.

Plaintiff was not working in the control room is not supported by admissible evidence.  In support of this assertion, Plaintiff presents only a copy of a schedule dated October 31, 2009, which is notated "was not implemented."   Second, it is undisputed that the allegedly unfair evaluation of Plaintiff prepared by Sgt. Pruszynski did not go into Plaintiff's personnel file. (DSOF 90; PSOF 90.)   Third, as stated in Section I, Plaintiff has not presented any evidence outside of her opinion demonstrating that the substance in the toilet brush holder was actually urine or that it had been intentionally placed there by a co-worker intending to harass her.

Plaintiff has presented a material issue of fact regarding whether she suffered an adverse employment action when she was constructively discharged in October, 2010 following her complaints about Sgt. Luzania.[15]   However, even assuming that Plaintiff suffered an adverse employment action when she felt compelled to resign from her employment, Defendants have articulated a legitimate, non-discriminatory reason for that action.  Plaintiff submitted a written request that she be put on a different shift than Sgt. Luzania when she returned from vacation.  Defendants accommodated that request and Plaintiff was assigned to floor duties with Sgt. Pruszynski as her supervisor.  However, for 2 days in October, while Sgt. Pruszynski was on vacation, Sgt. Luzania was scheduled to supervise Plaintiff from 6:00 p.m. to 9:00 p.m.  Administrator Gatwood testified that, due to scheduling and staffing difficulties, the County could not guarantee that Plaintiff would never work on the same shift as Sgt. Luzania.  (Doc. 52-1, pg. 88.)   EARJDF only employed three sergeants.   (*Id.*)    Plaintiff has failed to contradict Administrator Gatwood's testimony with evidence demonstrating that Defendants had an obligation and the ability to honor her request.[16]   Plaintiff has also failed to demonstrate that

---

[15] Defendants dispute Plaintiff's characterization of her termination as a constructive discharge; according to Defendants, Administrator Gatwood offered Plaintiff continued employment but was unable to modify Plaintiff's schedule so that she never worked with Sgt. Luzania, and therefore Plaintiff resigned.  (Doc. 51, pg. 20.)

[16] Plaintiff attempts to dispute Administrator Gatwood's testimony by citing to the DES testimony of Human Resources Director Neil Karnes and Assistant Administrator Aranda, both of whom testified that it might be possible for Plaintiff and Sgt. Luzania to be scheduled for

Defendants' stated reason for accepting Plaintiff's resignation was pretextual. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT Defendants' Motion for Summary Judgment filed on November 21, 2012 (Doc. 58) is GRANTED.

IT IS FURTHER ORDERED THAT the Clerk of the Court shall enter judgment in favor of Defendants and close the file in this matter.

Dated this 23rd day of September, 2013.

Jennifer G. Zipps
United States District Judge

---

separate shifts.  (PCSOF 106.)  As Defendants point out, however, Defendants did schedule Plaintiff and Luzania for separate shifts; Plaintiff and Sgt. Luzania only overlapped when Sgt. Luzania covered Sgt. Pruszynski's shifts during Sgt. Pruszynski's vacation. (DCSOF 106.) Neither Karnes nor Aranda testified that it was possible for Defendants to ensure that Plaintiff and Sgt. Luzania never worked together.  In fact, given that EARJDF employed only 3 sergeants and a sergeant was required for each of the 3 daily shifts, it seems almost impossible that such an arrangement could have been made.